The last case on the call this morning is case number 122891, April v. Elizabeth Clark, Agenda No. 8. Counsel, if you're ready, you may proceed. Good morning, Your Honors. May it please the Court. I'm Assistant Attorney General Eldad Malamuth, here today from the Illinois Attorney General's Office on behalf of the appellants for the people of the State of Illinois. In this case, the appellate court reversed defendant's conviction for failing to report to a penal institution, reasoning that she was not in custody. But for two reasons, this court should reverse. First, under the plain language of the statute, there is no custody requirement. Second, if there is a judicial loss with respect to custody, then defendant satisfied that element and was in custody for the purposes of failing to report. Turning to the first basis of reversal, this involves a straightforward matter of statutory interpretation. The cardinal rule of statutory interpretation is to ascertain and then effectuate the legislative intent, and the most reliable indicator of that intent is the plain and ordinary meaning of the words. Now, the relevant clause here is pretty clear. It states, a person convicted of a felony who knowingly fails to report to a penal institution is guilty of a Class III felony. Notably absent from that is custody. Indeed, notably absent from that whole clause of the subsection is custody. There is no dispute here that a defendant was convicted of a felony. There is no dispute that she was required to report to a penal institution. Could I ask some questions about what it is we have in front of us here, okay, so that we can kind of parse it all out? So she was convicted of burglary? Burglary and unlawful use of a debit card. And she was placed on probation. Exactly. And there was one violation of probation that was resolved one way, and then there's a second violation of probation that I think is in front of us now, right? Exactly. And she admitted a plea, basically, correct? She admitted that she had violated the terms of her probation again. So then the next thing that happens after admission to a violation of probation is a sentencing. That's right. Well, that can happen, yes. There's some kind of other hearing. The court's going to figure out what to do. Maybe the court's going to, as the court did here, continue probation or modify probation conditions or something like that. Exactly. There's an admission, and now before that next hearing where the court's going to decide what to do, the court enters this order of a temporary recognizance bond. I'm not sure I've ever seen a temporary recognizance bond. I'm going to let you out on bond, but then you have to go back into custody. Is that what we have here? Into the physical custody. That is correct. And the reason was that the court was trying to provide a defendant with an opportunity to show a mitigating circumstance. So the court had found that there was a root cause of the defendant's problems was that she had a substance abuse problem. And so the court, in an effort, even though the defendant had violated probation once, even though the defendant had violated probation again, the court allowed her the opportunity to complete the substance abuse training program, to try to show that she could move beyond this problem. And then, presumably, that would be taken into account. And then she would have to return to custody afterwards. Exactly. So it's kind of a hybrid kind of bond order here, right? It is an unusual circumstance. And certainly, generally when we talk about bail, we're talking about pretrial bail. Or even in the probation context, we're talking about sometime prior to where there's been an admission of violation of the probation. And so this is, the court was attempting to be flexible and attempting to give the defendant this somewhat unusual opportunity to go through substance abuse treatment before the judge decided what to do. So, Your Honor, it is correct. It's certainly not the ordinary circumstance of bail that we generally think of. And that is why there were such also definite limitations in the terms of her release from physical custody. She was released into the custody of her father. She was only allowed to go to the treatment center. At the first treatment center, she wasn't allowed to leave without an employee accompanying her. At the second treatment center, she also wasn't allowed to leave unless she was going to an AA meeting or these very limited circumstances. And then to return directly to the jail, at which point she would then again be in the physical custody of the jail, and then they would proceed with the sentencing hearing under Article IV. And so it is an unusual circumstance. And that goes to the second basis for reversals. The first basis for reversals, there simply is no custody requirement. There's a duty to report. And then if the defendant fails to meet that duty, then that satisfies the plain language. And that's a straightforward basis for reversal. But there's another basis for reversal, which is that if there's a custody gloss, a judicially read-in idea of custody, then that is satisfied here for a number of reasons. One is that the custody at that point, as soon as the defendant was discharged from the treatment center, she had to return to the penal institution. So at that point, she was in the constructive custody of the penal institution. And that's, for instance, in the Simmons case, the court said, in that case, the defendant was on a shopping trip, a day-release program, and was not in the physical confines of the jail. And the court said, well, that might be true, but you are in the custody of the correctional institution because that is where you legally must be. Your liberty is confined by law, and that is where you must be. And in that sense, the custody element of the escape is actually an enlargement of the crime, not some sort of limiting factor. So what the court in Simmons did, it did say, well, you are in custody, and that somehow narrows what escape is. Actually, custody in this context, in the escape context, was read in by this court to enlarge it, because it recognized that the problem that the legislature intended to address in escape is that you are not legally where you're supposed to be. You must be in the penal institution. You're not there. And so custody enlarged the crime. And the court said, this court said, no, just because you weren't in the four walls, that's not what we're talking about. You're not where you had to be. And so in this sense, the defendant's freedom was constrained to such an extent that she was at all points, really, in legal custody, constructive custody, but certainly at the point where she was discharged and had to return to the physical custody of the penal institution. So again, there are two bases. There's the straightforward statutory interpretation. Nowhere in the statute, in the relevant clause, is there a custody requirement. But of course, the word custody does appear elsewhere in the statute. We know if the legislature wants to discuss custody in the escape concept. It knows how to do so. How do we know that? Well, it does it elsewhere in the statute. It does it earlier in subsection A. It does it elsewhere in subsection C, and so forth. So we know what custody is if this legislature wants to make that relevant. It knows how to do so. If it didn't do it. And secondly, the defendant was in custody for the purposes of the statute for that judicial clause. So if there are no further questions. Is it clear that the defendant here was charged under the second part of the statute, failure to report as required? Yes, Your Honor. But that wasn't dealt with at all in the appellate court. No, that wasn't addressed. But the charging document clearly describes what the defendant was accused of. She was accused of failing to report as had been required of her. And so it's clear what was charged. Thank you. So if there are no further questions, we would ask this court to reverse the appellate court. Okay, Your Honors. My name is Pamela Rubio with the Office of the State Appellate Defender here on behalf of Elizabeth Clark. The Third District Appellate Court found that Elizabeth Clark was not proven guilty beyond a reasonable doubt of the Class III felony of escape. Because her conduct of failing to report to jail while released on bail bond did not constitute an act of escape. The court correctly determined that because Elizabeth had been released from custody by virtue of her bail bond, she was not subject to the escape statute. What does a temporary release mean? This was called a temporary recognition. How do we fit those words into the argument you're making here? Well, I think that the word temporary is superfluous. I think that the trial court, and in answer to your previous question, the timeline of the situation that was resulting in the trial court level is important here. She had violated her probation. She had been brought back in, re-released on probation, was brought back in again. She admitted to her violation. The court found that she violated it. All the parties agreed that the case would be continued for re-sentencing and that she was not currently under a sentence. While she went to jail, she came back. The trial judge released her on what the court referred to as a temporary recognizance bond. Also, confusingly, called it a $50,000 temporary recognizance bond. I think the important aspect of the trial court's order releasing her is that the judge found, as in every situation where a defendant is released on bail bond, that she was not a flight risk and she was not a threat to the safety of the public, and released her to inpatient drug treatment at which she successfully completed her program and then came back, was re-released with a whole new temporary recognizance bond order to outpatient drug treatment. Part of the conditions of the release of bond was a report to jail once she left the facility. Her custody was, she was not in custody when she was released on bail. This court has held time and again that the defendant's release on bail is a release from the custody of the Department of Corrections or the sheriff. A release from the custody of law enforcement. Do any of those cases have this other wrinkle of you're released, but you're not really released? Do you have to come back? She was released pending re-sentencing. She was not serving a sentence. It was an order that she has to come back. She has to go back into custody. You're released from custody, but you have to come back into custody. Do any of the cases that you talk about in terms of the judicial clause of the statute have a fact pattern like that? The closest that I could find is the case of People v. Ramos, and they talk about whether or not the defendant was in custody while he was on bail. And I believe it was for purposes of custody credit, a custody credit issue. And in that case, the defendant was released on bail and was subject to home confinement, so was not able to leave his home without getting permission from his probation officer. And in that case, this court found that he was not in custody because he had been released on bail. And that's the defining aspect of this case. And in People v. Simmons, the court also addressed the issue of custody and discussed that no matter – in that case, the court found that there was custody because the defendant had not been released on bail. And in that case, the defendant was actually in, I believe, a day reporting program from the correctional center and was allowed to go to the mall to go shopping and failed to return. And in that case, the distinguishing factor was that he was not released on bail. He was serving a sentence, and then it was up to the sheriff to allow him to leave and return based on the sheriff's conditions. He was obligated to return based on his obligations to the sheriff, not to a court. In contrast, when a person is released on bail, he's obligated to return to report to the court. It is the court who takes the authority and takes the responsibility over this person that the court deems to be responsible enough and safe enough to be released pending resentencing. And so that's exactly why the escape statute shouldn't apply to people who have been released on bail. This court has found that the escape statute does apply only to people who are in actual or constructive custody. And the state claims that the omission of the word custody, the magic word custody, in the second subpart of subsection A, must indicate that the plain language means that custody is not a requirement. But this court has stated that the whole legislative intent of the escape statute is to protect against the dangers of felons freeing themselves in evading punishment. That's in Simmons. And this court must ascertain the legislative purpose, must engage in statutory construction, even with using the plain language of the statute, with the spirit of the law in mind. What do we do with the words at any time? I think that at any time could mean that if a person is serving a sentence and is in the custody of the Department of Corrections or a sheriff, it could be while he's out shopping or on work release or is subject to day reporting or home confinement. I think that it relates to any of the alternative methods of imprisonment that the legislature took into consideration when creating the second subsection. So at any time incorporates custody? Is that your position? At any time, as long as a person is in constructive custody of law enforcement. Isn't that violative of statutory construction principles, the plain meaning of at any time? Aren't we reading into the statute then? I don't think that the term any time adds or detracts from our analysis here. I think the question is whether, the ultimate question is whether the person is in constructive custody. Ms. Rubio, I, Justice Thomas, are you? Ms. Rubio, isn't that custody issue a red herring here? I think if you're going to look at the plain language of the statute provides that a person convicted of a felony or adjudicated delinquent for an act which if committed by an adult would constitute a felony who knowingly fails to report to an institution or to report for periodic imprisonment any time knowingly fails to return from furlough or from work and day release who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony. But custody isn't really the issue. It's whether that person fails to report to a penal institution. Well, we know that a conviction is necessary for the second subpart to apply. But what also is necessary based on the way that the escape statute has developed, the way that this court has interpreted the terms escape, custody, and bail, that constructive custody is a necessity under the second subpart. It's the second MA. Second part of A. I think it has to be both according to subsection A. Subsection A, the way the escape statute was initially written was written long ago when we didn't have alternative methods of imprisonment. But we're not talking about escape. Right. Well, the entire statute is- It doesn't say that in the second part. That's a Class 2 felony. The second part doesn't use the word escape. It's just failure to report. Right. Yes. And it's- I believe that the heading of the entire statute is escape- Yes, but there's two parts to it. Semicolon failure to report. So subsection- I believe the entire statute is the offense of escape, and that the first part of subsection A deals with actual escape- Escape. The second part, which is a Class 2 felony. However, if someone fails to report to a penal institution or periodic imprisonment, it's the Class 3. Right. And I believe that's just an alternative method of charging someone with the offense of escape. And, in fact, in this case, Elizabeth was charged with- But I'm talking about in custody. You don't have to find that she was in custody. Well, our position is that the escape statute, both subparts of subsection A require custody. The first part involves actual custody from which you would physically escape. And the second doesn't use the word escape. You're not in physical custody, but you're in instructive custody. So that's why they use the word failure to report or return to the various components of the alternative sentencing that they were trying to address. They were trying to fix the loopholes that this court had noted in Simmons. As the evolution of sentencing occurred, they wanted to amend the escape statute to reflect those things and make sure that defendants released on home confinement were not shirking their punishment. Interestingly, in this case, Elizabeth was charged. The charging instrument lists the offense as the offense of escape and then goes into the elements. And the element is charged as knowingly failing to report to jail as required by her- or in accordance with the terms of her temporary recognizance bond. So even the charging instrument calls the offense escape. Then, you know, goes to the particular type of escape that they're charging, which is failure to report or return. And then also charges that the term that she didn't abide by was in connection to her bond conditions. She certainly could have been charged with a violation of bail bond. Yes, yes. Or just the criminal charges, and not just a violation of bail bond in the sense that her temporary recognizance bond could be vacated and some other order be entered, but specifically the crime of a bail bond. Right. And that's what she should have been charged with in this case if the state needed to charge her with something additionally beyond having her probation revoked on the underlying offense for which she eventually got a term of years. This is not the type of defendant the escape statute was meant to target. This is not, you know, a person that is freeing themselves from punishment or evading punishment. This is a person that the judge deemed to be responsible enough and safe enough. And you have to turn yourself in. Right. For resentencing, which she was resentenced to three years. She was punished for violating her probation. She was punished for the underlying offenses. If the court, if the state wanted to punish her for the act of failing to report to jail after being released from the treatment facility, they should have charged her with a violation of bail bond. And during those proceedings, she would have been able to present the defense that the violation of bail bond statute provides, where revocation that may not result if the defendant returns herself within 30 days. And, in fact, she returned. She brought herself to the jail, I believe it was nine or ten days after. So she actually had a defense to that charge if they had charged her with the right crime. Counsel, is this the first case that addresses the failure to report to a penal institution? As far as I can see, yes, under the escape statute. I believe that we have a lot of cases from this court dealing with alternative methods of punishment and whether that involves custody or not. So, for example, a defendant released by the sheriff on day reporting or various, what were some of the other ones that we've discussed? Day reporting. Isn't Simmons the only case that really deals with the escape statute? Well, this court has discussed the escape statute in CAMPA. CAMPA was a case where the defendant could not post bond, so he was in the custody of the sheriff while awaiting trial, and then it was the sheriff who decided to release the defendant to a day reporting program that he failed to return to. And although that defendant, the issue in that case was speed trial determination, but this court went into a lot of detail comparing the violation of bail bond to escape and discussed what custody meant and referred back to Simmons. And so it was a violation of bail bond case, but they said that it was a continuing offense. In CAMPA, though, wasn't there language that the amendment shows the statute progression, showing the legislature intended the crime of escape to evolve with changing terms of detention as a part of programs in our various correctional institutions? Yes, and that language actually supports our position that escape requires a custody element to be read into it and that the evolving definition of escape is because of the broadening punishments that are available to the courts and that the courts have been using. So the defendant in CAMPA had committed escape because he was in constructive custody of the sheriff's department, and that was before he was actually sentenced. But the defining factor in that case was that he was not released on bond. He was released by a sheriff. And so he was still in the sheriff's custody and could be found guilty of escape. So would the escape, if she had been released from the penal institution and told to go to the substance abuse center and she didn't show up? In her bond condition? As a bond condition? Yes. I'm sorry, could you repeat that? If she were in custody and released to go to the substance abuse center. You say custody, you have to be released from custody. She's released from custody to go to the substance abuse center, and she's released and she doesn't show up at the substance abuse center. Is that escape? If she was in custody of the sheriff's department, yes. Yes. Under CAMPA, yes. But the difference in this case is that the court released her on bond. And so the defendant, Elizabeth, wasn't... In custody. In custody, was not required to report to... Her requirements to report to jail were a condition of bond. It was not because the jail had any kind of constructive or actual custody over her. By definition, a release on bail is a release from custody of law enforcement. And so it can't be both, it's one or the other. There was no challenge to the validity of the charging instrument, or was there? No, it was a... Which didn't charge custody. No, it was discussed, you know, it was argued below that it was a reasonable doubt argument. Secondly, you're asking us, it seems, to read into the second part of this subparagraph, a custody as part of that, and to ignore the word however. It certainly indicates to me a complete departure from what the first part of the sentence says. I think that the plain language, as it's written, only deals with custody scenarios. There are examples of constructive custody. So it's a laundry list of constructive custody scenarios. So you are asking us to read custody into the second part of that. Well, if you... My position is that it's unnecessary to because the plain language encompasses only custody, constructive custody scenarios, does not explicitly list a bail bond scenario. But if you find that it's necessary to read the word custody into the second subpart of A, then this court should, based on the legislative history, the way that the escape statute developed, this court's case law on the subjects of escape, custody, bail, purpose behind the escape statute. Those are all reasons why this court should, if it finds necessary, read constructive custody into the second subpart of subsection A. And notably, the first part of subsection A doesn't have the magic word custody in it either as it relates to escaping from a penal institution. Obviously, everyone would agree that custody is required for that component of subsection A, and I don't think that it's absurd for us to make the same conclusion for the second subpart of subsection A It's an escape statute. It's about custody. It's about the evasion of punishment and the safety of the public. And application of that law to a scenario involving a defendant who's been released on bail bond would not be within the spirit of the law behind the escape statute. And for those reasons, we ask this court to affirm the appellate court's condition. Thank you. Reply. Good morning again, Your Honors. Mr. Malamuth, can I ask you this question to clarify the record? The basis for the offense, the charge of failing to return to Whiteside County Jail, is that condition in the order of probation that's attached to your appendix, or is that in a separate order of bond? Because I don't have the whole record here. Sure. The duty to report to the penal institution comes from the temporary recognizance bond, as well as the fact that she was on probation and then had already admitted that she had violated probation. Okay, but my question is, is it in that order of probation that's attached to your appendix? No, it's not in the original order. Okay. And the bond's not attached to the brief? The bond is in the record. I'm not sure that it's in the appendix. Okay. I just want to make sure we're looking at the right language. Sure. I apologize. No, no. No need to apologize. So working backwards for the basis of reversal here, quickly to discuss the nature of the temporary recognizance bond and the nature of the constructive custody that the tenant was, in fact, in. First of all, temporary here isn't superfluous. We don't read words as superfluous. We read words as descriptive, and here it was a description of her temporary release. And indeed, what the release from physical custody was was quite unusual. So she's not released just generally. She's actually released quite specifically into the custody of her father, not just released. She's released into the custody of her father. Then she is only permitted to go to this inpatient treatment. And then I believe, to correct the record, even the second treatment center, it's not an outpatient treatment. Certainly that wasn't what the court had in mind. In the second treatment center, she is not allowed to leave. This is on page C28 of the record. She'll be allowed to leave only for the purposes of employment, medical needs, and AA, NA needs. So she's not released from custody until essentially she's released into very specific custody, to go to a very specific place, and then to return immediately. So it's not a release on bail in the general sense that we think of it, and certainly not on a pretrial basis. Would she be guilty of escape if she left the inpatient program? And if she left the inpatient program and then didn't return to the ‑‑ No, just to say that, the first piece. The court said she shall not leave. Must not leave the inpatient. I'll release her on this temporary pregnancy bond, but she must stay at the and cannot leave the treatment center. Well, yes, unless she returned. So she's allowed to leave if discharged, or she decides to forego the continuation of the treatment. But otherwise, that would be correct. And so she is in the custody in the sense that, again, the judicial gloss on top of the actual words of the statute. But this court should, of course, as discussed, first turn to the plain meaning of the statute. And here we have clear indications of what the legislature intended. For instance, Your Honor brought up the words, at any time. Of course, as counsel states, at any time could mean a variety of things. It could mean the examples she gave. But, of course, it also encompasses lots of other examples and, indeed, encompasses all the other examples because it means at any time. The court, again, carefully delineated where it included custody. It didn't include it in the relevant clause that we're dealing with. Then, of course, it makes no sense to you. Custody makes sense when we're talking about escaping from a penal institution. It doesn't make sense when the person is failing to report to that penal institution. So we should turn to the plain meaning of the words. And here, in a variety of ways, it was made clear that custody is not a requirement for failing to report. If there are no further questions, we would ask this court to reverse. Thank you. Case number 122891, People v. Elizabeth Clark, will be taken under advisement as agenda number eight. Mr. Malamud, Ms. Rubio, we thank you for your arguments this morning. You're excused with our thanks.